NOT FOR PUBLICATION

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

| | |
|---|---|
| In re: | |
| NICHOLAS A. MATTERA, | Civil Action No. 06-cv-2115 (PGS) |
| Debtor, | |
| | **OPINION** |
| CATHERINE ROMANIA, | |
| Appellant | |
| v. | |
| NICHOLAS A. MATTERA | |
| Appellee. | |

**SHERIDAN, U.S.D.J.**

Appellant, Catherine Romania ("Romania" or "Appellant") appeals from orders of the United States Bankruptcy Court ("Bankruptcy Court"), entered on February 6, 2006 and March 21, 2006, (1) denying her motion to dismiss Debtor/Appellee, Nicholas A. Mattera's ("Mattera" or "Appellee") Chapter 11 petition, and (2) granting limited relief from the automatic stay. For the reasons stated herein, the Court will dismiss the appeal.

I.

Appellant, Catherine Romania, and Debtor/Appellee, Nicholas A. Mattera, were married in 1981. Over the course of their 18-year marriage, the couple produce five children, who at the time

of the filing of the Complaint for Divorce, in May 1999, ranged in age from 10 to 20. Both parties are attorneys. Appellant is an estate planning attorney with extensive experience in real estate, wills, and matrimonial law and has an LLM degree in taxation. Appellee is a self-employed practitioner with 24 years of experience in the fields of personal injury, criminal trial practice, matrimonial, and medical malpractice. Appellant left her employment with the law firm of Carpenter, Bennett & Morrissey in 1990 and formed a partnership with Appellee at the Law Offices of Nicholas A. Mattera, where Appellant handled all financial and administrative aspects of the firm. Appellant chose to dissolve the partnership in 1997.

From 1993 through 1998, the five years preceding the divorce complaint, Appellant claims that Appellee's average annual gross income was $1,359,651.00, with a net income of $823,346.00. Subsequent to the filing of the divorce complaint, Appellant points out that Appellee's expenses inexplicably doubled, including an extraordinarily exaggerated figure of 98% of gross income in 2003. Appellee maintains that Appellant's dissolution of the partnership forced Appellee to hire bookkeepers, tax experts, and a payroll and pension expert at great expense. Further, in March 1999, the enactment of the New Jersey Automobile Insurance Cost Reduction Act ("AICRA") dramatically affected Appellee's personal injury practice, substantially reducing the value of Appellee's business.

Appellant, however, maintains that Appellee's practice was not suffering at all, but rather Appellee was engaging in a scheme to conceal his assets and create debt. It is argued that the compensation plan offered to Appellee's associates "guaranteed" that the business would lose money. Associates were paid salaries ranging from $65,000 to $90,000 per year, provided with health insurance, profit sharing plans, and bar association dues. Two of the three associates at Appellee's firm also allegedly received fifty percent of the revenue from every case they worked on. These associates were allowed to maintain their own trust and business accounts which allegedly

held income due the law firm. Appellant also claims that Appellee gratuitously gave large payments that were not earned or owed to his associates. Furthermore, Appellant contends that Appellee failed to collect on successful cases and merely deducted the costs from his tax returns/financial statements.

The two referenced associates were identified by Appellee as George Szymczak and William Roca. Szymczak was hired in 1996 to litigate and take depositions, for which the firm had been paying significant sums for *per diem* attorneys. Szymczak was a solo practitioner who agreed to work as Appellee's associate for $65,000 and 50 percent of whatever business he generated. He also was paid 33% on workers' compensation files that Appellee generated. Roca, a trial attorney with over ten years of experience, was hired in 2000 for the same compensation package received by Szymczak. Both attorneys brought with them over 200 files. Contrary to the claims asserted by Appellant, Appellee maintains that Szymczak and Roca receive as compensation 50 percent of the revenue generated by cases they brought into the firm, not 50 percent of every case they worked on. However, because Szymczak had experience in workers' compensation matters and Appellee previously had to refer to other firms the workers' compensation cases generated by Appellee, Szymczak was offered 33 percent of workers' compensation fees generated by Appellee. With regard to the trust accounts, Szymczak and Roca retained their own accounts because they had their own practices when they joined the firm and it was easier for them to use their own accounts.

Appellee maintains that his resources were continuously being drained. Since the end of 1999, Appellee paid to Appellant $10,000 per month and over $400,000 in legal and expert fees in the matrimonial matter. In 2002, Appellant obtained a $100,000 line of credit from the Bank of New York. When that was exhausted, Appellee obtained a $250,000 line of credit from Sovereign Bank. To date, Appellee has used approximately $180,000 of that line of credit. There funds, according to Appellee, were used to meet expenses of his practice. In 2004, Sovereign called in its loan.

However, Appellee's accountants were able to obtain a year's extension.

On September 24, 2001, the state court issued an oral judgment of divorce, later memorialized in a written judgment on January 7, 2002, which left outstanding issues involving custody, equitable distribution, child support, and alimony.  Trial in the matter to resolve the financial issues was scheduled to proceed on July 25, 2005.  Appellant's attorney, however, was on trial and scheduled to resume proceedings on July 26, 2005.  The parties appeared for trial on July 25, 2005, where the state court took three hours of direct testimony before adjourning the matter until September 13, 2005.  On September 6, 2005, Appellant's attorney, again, advised the court that he was still on trial and was uncertain whether he would be available to recommence the hearing on September 13, 2005.  An adjournment was requested until early October 2005.  However, in a subsequent letter, on September 8, 2005, Appellant's attorney advised the court that neither Appellant nor his forensic accounting expert would be available in early October 2005.

In August 2005, upon expiration of the year's extension previously granted by Sovereign Bank, the bank called in its loan again, unwilling to grant a similar extension.  Appellee was offered to extend his line of credit for two month for $1,600.00, however Appellee believed that after the two month period, he would be back in the same financial position with no means to pay the bank. Further concerned that the Bank of New York would call in its loan also, on September 9, 2005, Appellee filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the District of New Jersey.[1]  At the time of the petition, Appellee scheduled a total of 15 unsecured creditors, including Appellant's claim.

---

[1] Appellant argues that the timing of the bankruptcy filing, on the eve of trial, suggests Appellee's desire to prevent Appellant from obtaining a favorable equitable distribution. However, as Appellee notes and the Bankruptcy Court found, Appellee sought an adjournment of the matter to an unspecified date beyond early October 2005 at the time the bankruptcy petition was filed.

On October 11, 2005, Appellant filed a motion to dismiss Appellee's Chapter 11 case or, in the alternative, to vacate the automatic stay. Following oral argument, the Bankruptcy Court issued a written opinion on February 6, 2006, denying the motion to dismiss, but granting stay relief. The Opinion of the court explained that Appellant's "motion to lift the automatic stay...is hereby granted, and the parties are permitted to conclude the divorce action in state court. With respect to issues of equitable distribution, the state court shall determine and fix the equitable distribution award while [the Bankruptcy] Court shall retain jurisdiction to apportion assets set by the state court as part of the Debtor's continuing reorganization process." On February 15, 2006, Appellant filed a motion to reconsider or clarification of the court's February 6, 2006 Order. Denying the motion for reconsideration, the court requested that Appellee's counsel submit a clarifying order in conformance with the court's February 6, 2006 Opinion. Appellant's counsel objected to the form of order submitted to the court and submitted an alternative proposed form of order. On March 21, 2006, the court entered the form of order initially submitted by counsel for Appellee, by which the court:

> **ORDERED** that the request for stay relief is hereby granted, and the parties are permitted to continue the ongoing matrimonial proceedings in state court in order for the state court to finalize its determinations with respect to the issues of alimony, child support, custody, determination of damages, if any, and to fix and/or liquidate the parties' monetary claims for equitable distribution of the marital assets to which each may be entitled; and it is further
>
> **ORDERED** that this Court shall retain jurisdiction to determine the allowance of such equitable distribution claims against he bankruptcy estate and to apportion bankruptcy estate assets as part of Debtor's continuing reorganization process...

Appellant filed a Notice of Appeal on March 29, 2006, maintaining that the Bankruptcy Court erred in denying her motion to dismiss. More specifically, Appellant contends that the Bankruptcy Court failed to find that Appellee petition was filed in bad faith, failed to find that

Appellant's right to equitable distribution vested upon the entry of the Judgment of Divorce, and failed to find the existence of a constructive trust.

II.

It is of course, axiomatic that district courts are vested with jurisdiction to hear appeals from the bankruptcy courts. 28 U.S.C. § 158(a) provides:

> (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Federal law thus provides two avenues of appeal to the district court from bankruptcy court orders.  A party has an appeal as of right from final judgments, orders or decrees or an appeal by leave of court from an interlocutory order. *In Re National Office Products, Inc.*, 116 B.R. 19, 20 (D.R.I.1990).  The concept of finality is somewhat broader in the bankruptcy context than in ordinary civil litigation. *In Re Hooker Investments, Inc.*, 937 F.2d 833, 836 (2nd. Cir.1991); *In Re Oglesby*, 158 B.R. 602, 604 (E.D.Pa.1993). See also, *Locks v. U.S. Trustee*, 157 B.R. 89 (W.D.Pa.1993). Rather, in bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that the court must have finally resolved, rather than the entire bankruptcy, for a decision to be final. *In Re Oglesby*, at 604.  Stated otherwise, to be final, an order in a bankruptcy proceeding need only conclusively determine a discrete dispute within the larger case; it does not need to dispose of the entire bankruptcy proceeding. *In Re Hooker*, at 836; *In Re Chateaugay Corp.*, 922 F.2d 86, 89-90 (2nd Cir.1990); *In Re National Office Products*, *supra*, at 20.  When an order, entered or not, resolves only a preliminary matter, it will not constitute a final order for purposes of an appeal. *Id.* Moreover, the bankruptcy rules for filing a notice of appeal are mandatory and jurisdictional, and

thus failure to file a timely notice of appeal deprives the district court of jurisdiction to review a bankruptcy court's final order or judgment. *In Re Rozark Farms, Inc.*, 139 B.R. 463, 465 (E.D. Mo.1992).

In this case, the Bankruptcy Court directed the parties to go back to state court in order to fix and/or liquidate the parties' monetary claims for equitable distribution of the parties' assets and then to return to the Bankruptcy Court to determine the allowance of such claims and to apportion bankruptcy estate assets as part of the debtor's continuing reorganization process. Indeed, any order within a bankruptcy case that concludes an individual adversary proceeding is final and reviewable. *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1548 (11th Cir.1996). It is clear to this Court that the Bankruptcy Court, ordering the parties to return after the state court fixed the parties' claims for equitable distribution, did not conclude the adversary proceeding and, thus, the challenged orders are not final and reviewable. *Id.*

Bankruptcy Rule 8001(b) requires a party to move for leave to appeal if seeking to challenge a nonappealable, interlocutory order. Appellant Romania failed to so move, and thus filed improperly her notice of appeal. "[A] premature notice of appeal 'shall have no effect'...In short, it is as if no notice of appeal were filed at all." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (quotations omitted). The Court thus has no jurisdiction to act because the requirement of a properly filed, timely notice of appeal is "mandatory and jurisdictional." *Id.* (quoting *Browder v. Director, Illinois Dep't of Corr.*, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978)).

Accordingly, the Court finds that it lacks jurisdiction over the appeal pending in this matter since neither the February 6, 2006 Order nor the March 21, 2006 Order is final, and Romania did not seek leave to appeal as required under Bankruptcy Rule 8001(b). The appeal is hereby dismissed.

See *Associates Fin., Inc. v. Amann*, 57 B.R. 379, 380 (noting that "the dismissal is without prejudice to a future appeal from a final order of the Bankruptcy Court.").

| | |
|---|---|
| March 2, 2007 | <u>S/ *Peter G. Sheridan*</u><br>PETER G. SHERIDAN, U.S.D.J. |